Erik Estavillo
3284 Cortese Circle
San Jose, CA. 95127
(408) 593-1226
Webbbnet@aol.com



FILED

MAR 26 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| Erik Estavillo,<br><br>        Plaintiff,<br><br>v.<br><br>Behaviour Interactive (creators of Dead by Daylight), Valve Corporation (of Steam Software)<br><br>        Defendants. | Case No.: 19-cv-01025-SVK<br><br>**COMPLAINT (Amended)**<br><br>**JURY TRIAL DEMANDED**<br><br>Judge: Honorable Susan van Kleuen<br>Date Action filed: Feb. 25, 2019 |

### 1. JURISDICTION:

This court has jurisdiction over this complaint because it arises under the laws of the United States. More specifically, it arises under and involves the Americans With Disabilities Act (ADA), which is a well known federal law and with which the plaintiff officially suffers from a number of debilitating disabilities, both mental and physical, including but not limited to Major Depression, Obsessive Compulsive Disorder (OCD), Panic Disorder, and Crohn's Disease; which has resulted in the plaintiff receiving disability payments from the Social Security Administration. Furthermore, both defendants reside outside of state lines, implementing Diversity requirements. Valve Corporation is located in Bellevue, Washington State. As where

Behaviour Interactive is located in Montreal, Quebec, Canada, but maintains a significant domestic 'home' presence as it conducts much of its business here in Northern California and on the Western Coast of the United States by ardently and functionally maintaining its video games in many U.S. video gaming stores as well as on the Steam store, where the violations against the plaintiff occurred. There is already federal precedent allowing for a U.S. Federal Court to summons a Canadian company as ruled by The United States Court of Appeals for the First Circuit on Nov. 12, 2014; and "has confirmed that courts can take 'long arm' jurisdiction over a Canadian resident corporation, even when the company has no physical presence in the American jurisdiction, and the only contact between the parties was by electronic and telephone communications across the border," via *C.W. Downer & Co. v. Bioriginal Food & Science Corp. No 14-1327.* (documented evidence for all cases listed here on out have been provided along with this amended complaint.) Furthermore, the Diversity requisite is also met because the monetary amount in question is more than $75,000.

2. **VENUE:** Venue is appropriate in this Court because both defendants reside outside this district; however, the plaintiff resides in Northern California and finds it much too difficult, both mentally and physically, to travel more than one state away as he suffers from both mental and physical disabilities, as stated previously. He has never traveled more than one state away his whole life and even finds that to be very difficult. Also, a substantial amount of the acts and omissions giving rise to this lawsuit occurred in this District. Furthermore, California law requires stores (digital or otherwise such as Steam) that do not accept return or refunds must clearly display their policy as explicitly as possible, as stated in California Civil Code section 1723. And since Steam does not offer a digital return or refund for banned video gamers, no matter the reasoning/justification of the ban or whether it was valid to begin with as well as them

giving no prudence about the time frame or monetary amount in question when a customer requests a refund after being banned by a video game developer selling merchandise via their Steam platform; they are therefore violating California Civil Code section 1723 by not explicating stating this in front of their digital store as required by California Civil Code section 1723.

### 3. INTRADISTRICT ASSIGNMENT:

This lawsuit should be assigned to the San Jose Division of this Court because a substantial part of events or omissions which give rise to this lawsuit occurred in Santa Clara County.

### 4. STATEMENT OF FACTS:

The plaintiff is an avid video game player, and since suffering from Depression, OCD, Panic Disorder, and Crohn's Disease; heavily relies on video games for the little stability he can achieve in this life. Having these debilitating diseases means he has no friends (as phone records can prove) and rarely socializes outside of the house. Therefore, he heavily relies on video games for communication with other players and other socialization needs that he can only meet via this video gaming medium. He also relies on video games to occupy his time and distract him from said disabilities. However, video game developer Behaviour Interactive deemed it necessary to permanently ban him 64 days ago as of the writing of this amended complaint, from their video game, Dead by Daylight. He had previously been "warned" and temporarily banned for very vague reasons such as "harassment", but was never given proof of said events via pictured documentation or video evidence, despite requesting it multiple times. Plaintiff, however, has video evidence via Youtube and Twitch, of other video game customers/streamers that

Behaviour Interactive has banned discriminately and often times arbitrarily, based on how the moderators feel towards a gamer, and not so much about the facts in question. The plaintiff played Dead by Daylight every night for months on end, and in a very certain way because of his Obsessive Compulsive Disorder and cannot perceivably play any other way since he plays accordingly to what his mental illness will allow. However, moderators for the game, more specifically a moderator that goes by the name of Giddawid, stated that he did not like how the plaintiff was playing the game as the 'Killer' Freddy Krueger, and after the plaintiff was verbally attacked by other 'Survivor' players in a post-game chat lobby, he defended himself against their attacks. But moderators for the video game Dead by Daylight viewed this as "harassment" on his part, without providing him requested pictured/video documentation of other-like said events, and eventually banned him permanently without any monetary recourse such as a return or refund, despite the plaintiff having spent nearly $500 on their video game via microtransactions on the Steam store. Furthermore, the plaintiff owns 33 video games on the Steam store but is only banned from 1 video game, that being Dead by Daylight of Behaviour Interactive. This fact shows that plaintiff followed rules in all other games he played via Steam, did not have a history or the habit of being banned in any different video games, and that Behaviour Interactive and Steam are illegally complicit in allowing many players to be banned, such as he was, via this 1 particular video game. This results in thousands of wrongly banned players having to repurchase the game so that Steam and Behaviour Interactive can illegally profit monetarily from hundreds of arbitrary bans against players who have to repurchase a 2nd, and often 3rd copy of the game if they wish to continue playing.

## 5. CLAIMS

**Claim 1:** Steam is a complicit violator against California Civil Code section 1723 by not explicating stating that no returns or refunds are available in front of their digital store for banned video gamers (who may be mentally disabled such as the plaintiff and/or are minors and not as keen into understanding such EULA legalese without caregiver/parental help). To make matters worse, some players were undoubtedly undeserving of their arbitrary, biased bans in the first place. These customers are then without monetary recourse such as refund/return despite having spent a substantial amount of money on video games in the Steam marketplace, such as the plaintiff had.

**Claim 2:** Steam and Behaviour Interactive are violating the Americans with Disabilities Act; Title III – Public Accommodations and Commercial Facilities *42 U.S.C. §§ 12181–12189* and Title IV - by not updating their websites/EULAs' to meet the needs of Americans with Mental Disabilities such as the plaintiff's need to have it explicitly disclosed on the storefront as well as in the beginning of both Steam and Behaviour Interactives' EULAs' stating important facts about refunds, returns, and other important information that people with disabilities/and or minors under the age of 18 need explicitly explained to them, such as which rights they are giving up by agreeing to an EULA. This is made further worse by their EULAs' not initially ever recommending for these disadvantaged groups to have a caregiver/parent overlook or read these EULAs' with them or for them. There is a U.S. Federal Court precedent for this as previously ruled by U.S. District Judge Robert N. Scola, in a nonjury trial in the District Court for the Southern District of Florida, where he states for what is believed to be the first time, a court ruling that failure to make a website (physically and mentally) accessible to people with disabilities violated the Americans with Disabilities Act., as where it was found, "(in) a 13-page

finding (that) grocer Winn-Dixie violated Title III of the Americans with Disabilities Act by having a website that was not useable by plaintiff Juan Carlos Gil to download coupons, order prescriptions and find store locations. Mr. Gil is visually impaired and uses screen-reader software to access websites. Judge Scola awarded Mr. Gil his attorneys' fees and costs and required Winn-Dixie to update its website. In its verdict, Judge Scola wrote, 'Winn-Dixie has violated the American Disabilities Act because the inaccessibility of its website has denied Gil the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations that Winn-Dixie offers to its sighted customers." This ruling should also further apply to Americans with Mental Disabilities such as the plaintiff in this case, whom needs explicit explanations as to refund policies and other vital information on digital video gaming storefronts such as Steam that may illegally take away certain rights or monies that the plaintiff and/or other disabled video gamers may instead need for everyday life necessities. Video gamers with mental disabilities need certain imperative rules and regulations explicitly explained to them right away, shown to them right away, and not to be hidden at the bottom of an EULA they may have trouble deciphering in the first place, such as the plaintiff did due to his mental disabilities; <u>Gil v. Winn Dixie Stores, Inc., No. 1:2016cv23020 - Document 63 (S.D. Fla. 2017)</u>.

**6. REQUEST FOR RELIEF:**

Plaintiff respectfully prays for a judgment against Defendants for:

i. Injunctive and equitable relief as the Court deems appropriate including:

    a. Requiring Steam to comply with California Civil Code section 1723 by stating explicitly on the front-page of their Steam store that there are no refunds/returns for players suffering from mental disabilities who are permanently banned from a video game.

b. Requiring both Defendants to update their EULAs' to help consumers with mental disabilities/and minors better find important information regarding refunds, returns, and which rights they are giving up. These should be stated at the top of the EULAs' instead of at the bottom. We're also asking that their EULAs' initially advise that a caretaker or parent read the EULA along with them or for them if they are mentally disabled or are a minor under 18 years of age.

c. Compelling the Defendants to reinstate any mentally disabled banned players that were not initially given pictured or video evidence along with the reasoning for their permanent bans; to serve as aided proof for the reasoning for their initial banning.

ii. Compensatory damages to be paid by all Defendants, according to proof at trial, along with;

    iii. Punitive damages in the amount of $10 million dollars against Steam and $5 million dollars against Behaviour Interactive

    iv. And any additional punitive damages the court/jury may deem appropriate.

_____

Plaintiff Signature
Demand for Jury Trial